CHARLES F. VOGEL *v.* CITY OF ST. LOUIS, Appellant, and CHARLES GREEN ET AL., Respondents.

### December 12, 1882.

1. CHATTELS, POSSESSION OF. — Possession of personal property is *prima facie* evidence of ownership in the possessor.

2. PRESUMPTIONS — OFFICERS. — There is no presumption that money held by a public officer was acquired by him in an official capacity.

3. OFFICERS — DEFAULT — DEBTOR AND CREDITOR. — The default of a circuit clerk in the payment to the county of surplus fees, raises merely the relation of debtor and creditor between them.

4. —— Such default does not give the county a specific property in special deposits of litigants in the hands of the clerk.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Affirmed.*

LEVERETT BELL, for the apellant.

H. A. & A. C. CLOVER, for the respondents.

LEWIS, P. J., delivered the opinion of the court.

The petition states that the plaintiff is clerk of the St. Louis Circuit Court, and the successor in that office of Philip Stock, who was the successor of J. Fred. Thornton, now deceased : that, during the time when Thornton held the

office, large sums of money belonging to divers litigants came into his hands, as special deposits, which were to be held by him until the determination of the rights of the several parties, respectively, claiming the same ; that, at the expiration of his official term, there remained in his hands the sum of $14,487, and, in order to secure the proper payment thereof, he delivered to his said successor certain checks and a certificate of deposit, whose aggregate face value, after certain necessary · deductions, was $15,-920.82 ; that Stock realized and paid to the proper parties certain sums in cash, so that, at the expiration of his term of office, he turned over to the plaintiff $3,628.84 in cash, and also what then remained of said securities ; that the plaintiff realized further on the securities and paid such sums as were directed to litigant depositors, so that there finally remained in his hands the sum of $1,659.38, whereof there was still due to depositors, $225.55 ; that the net balance, $1,433.83, is claimed by the defendant the city of St. Louis, and also by the defendants Green and others. The plaintiff is unable to determine these conflicting claims, and brings the money into court praying that the parties be ordered to interplead, and that the said matters may be lawfully adjudicated, with proper allowances, etc. The circuit court finally decided in favor of the defendants Green and others, and the city appealed.

The following facts appear in the record : On February 4, 1878, the circuit court, in general term, examined the statements and accounts of their clerk Thornton, and, ascertaining certain balances against him, on various accounts, ordered that the same be paid into the city treasury, within fifteen days. Afterwards, two suits were instituted by the city against these defendants Green and others, as sureties on Thornton's official bond. Each of these suits found its way, in due course of procedure, to the supreme court. The city's answer in the present cause alleges that it was judicially ascertained in those

several procedures, that Thornton, as clerk, was indebted, on various accounts, for moneys received by him and belonging to the city, in the aggregate sum of $30,924.49. On January 12, 1881, the municipal assembly of the city of St. Louis adopted an ordinance empowering the mayor, comptroller, and counsellor to dismiss and forever discontinue the suits above mentioned, and to enter satisfaction of any judgment therein, "upon condition that the defendants pay all costs in said cases, and also pay into the city treasury the sum of $12,500." These conditions were performed, shortly afterwards; and the suits were accordingly dismissed in the supreme court.

On February 6, 1879, Thornton executed and delivered to the defendants Green and others, his sureties, a deed reciting their liability on his official bond, and conveying, in consideration thereof, and for divers other good causes and considerations, "all and all manner of goods, chattels, debts, accounts, claims, moneys, and all other things of him the said J. Fred. Thornton whatsoever, as well real and personal, of what kind, nature, or quality soever." Hence arises the contest between the parties here interpleading.

On the part of the city, it is claimed that the assets handed over by Thornton to his successor were in fact the property of the city, and were held by the clerk as a mere depositary, by virtue of his office. The sureties insist that no fact in the record sustains this claim, and that the only admissible legal presumption arising from Thornton's possession of, and dominion over, the assets is, that they were his own property. That, upon his dedication of the assets to a specific purpose, in the hands of his successor, when that purpose was accomplished with a part of them, the residue became again his individual property, and passed by his conveyance to the sureties.

We are not aware of any legal presumption which asserts, as a matter of law, that money or securities in the pos-

session of one who holds a public office shall be deemed, in all cases, to have been acquired by him in his public capacity. If there be satisfactory proof that he has never owned or acquired any such money or securities in his individual right, or in any right other than that of his office, it may follow, as a logical inference, more or less conclusive, that they came to him through official channels. But the question would still be one of fact to be determined by the triers of fact. On the other hand, possession of personal property is *prima facie* evidence of ownership in the possessor, and needs no supplementary proofs of how it was acquired. If the sureties had, in the present case, offered to prove that Thornton had previously acquired $100,000. by inheritance or successful speculation, there can be no question that the learned and skilful counsel for the city would have effectually objected to the evidence for irrelevancy.

Tested, by these principles, the question here presented can have but one solution. There is absolutely nothing in the record, which tends to show that Thornton had acquired the securities in controversy, or the money represented by them, in his official capacity. Nor is there anything to rebut the legal presumption of personal ownership, which pertains to the fact of his personal possession at the time of the transfer to his successor.

But these considerations, sufficiently conclusive in themselves, are supplemented by others of like effect. Suppose it were established, by evidence or by legal presumption, that the securities in controversy, or their proceeds, were the identical funds which Thornton received from the litigant depositors. The city pretends no claim to a specific ownership, qualified or otherwise, in those particular funds. The only claim preferred against the delinquent clerk is one of general indebtedness on other accounts. No execution or garnishment process has attempted to fix a lien

upon the funds. Is there any rule whereby, when the city of St. Louis appears as a claimant, all the disabilities of a general creditor to interfere with an ordinary transfer of property for lawful consideration must vanish, and a *sic volo* will suffice to destroy the rights of grantees who are charged with no fraud? We think not. And yet, no other rule could justify the claim here asserted for the city. That Thornton was a public officer; that he received large sums of money, and failed to account for them; that among these sums were moneys belonging to the city, which the city has lost,— all these elements may go to make up a liability on the official bond of the delinquent to indemnify the losing creditor. But, without something more, they can cut no figure as title papers to all the personal effects which Thornton happened to have in his possession, or under his control, at the time when his delinquency was ascertained. The judgment will be affirmed. All the judges concur.